## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONELLE ENSOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil No. 3:22-cv-00216 |
| | ) | Judge Stephanie Haines |
| CLEARFIELD PROFESSIONAL | ) | |
| GROUP, LTD., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

Jonelle Ensor ("Ensor") initially filed this civil action (Complaint, ECF No. 1-3) in state court, and it was later removed to this Court on November 23, 2022 (ECF No. 1). Ensor makes claims against Defendant Clearfield Professional Group, Ltd. ("Clearfield") for breach of contract, interference with benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), and through supplemental jurisdiction, for a violation of the Pennsylvania Wage Payment and Collection Law ("WPCL") at 43 Pa.Stat. § 260.3. Presently, before the Court is Clearfield's Rule 12(b)(6) Partial Motion to Dismiss (ECF No. 6) Ensor's Complaint asserting that she has failed to sufficiently plead plausible claims of breach of contract, at counts I and III, and failed to sufficiently plead a plausible claim of interference with ERISA Benefits at count IV. In support of its Partial Motion to Dismiss Clearfield contemporaneously filed a Brief (ECF No. 7). Ensor filed a Brief in Opposition to the Motion for Summary Judgment (ECF No. 9) and Clearfield filed a Reply (ECF No. 10 a second "Brief in Support"). The matter is ripe for disposition.

### I. Factual Background

The facts of this case are best laid out with a timeline.

- **September 30, 2013**, Ensor was hired by Clearfield as a Physician's Assistant.  ECF No. 1-3, ¶ 5.  The Employment Contract included the following provisions:  That Ensor would be paid a salary of $75,000.00 a year ($2,884.62 every two weeks).  ECF No. 1-3, p. 20, ¶ 1. That on April 15, 2013, a re-assessment was to be carried out regarding profit/loss over the first six months of the year and reimbursement would be adjusted at that time.  *Id.*  That Ensor was to work 40 hours per week and would be reimbursed at the rate of $54.09 per hour for each hour worked over 40 hours.  *Id.* ¶ 2; ECF No. 1-3, p. 8, ¶ 10.  That Ensor would be provided with three weeks of vacation and one week of education leave that could be taken at her discretion.  ECF No. 1-3, p. 20, ¶ 5.  That the term of the contract was for one year to be renegotiated within 60 days before the termination of the contract.  *Id.* ¶ 8. That the contract could be terminated by either party with 30 days' notice.  *Id.* ¶ 10.  Ensor claims the Employment Contract was later orally amended in 2014 and 2015 to increase her rate of pay.  ECF No. 1-3, p. 8, ¶¶ 8-9.  Ensor does not provide the exact dates, the amount of increase, or with whom she negotiated the oral agreement.

- **August 25, 2015**, Ensor and Clearfield entered a second agreement, the Loan Repayment Assistance Agreement.  ECF No. 1-3, p. 21.  Under this Agreement, Clearfield agreed to provide student loan repayment assistance in the amount of $1,600.00 added to Ensor's monthly salary for the remaining term of her loans ending on October 9, 2024.  *Id.*  As consideration for the loan repayment, Ensor agreed to maintain a case load of 260 patient appointments each month and she would remain in the employ of Clearfield for one year after the loan repayment was satisfied (October 9, 2025).  *Id.*

- **April 2020**, Ensor states she began working overtime hours but was never paid as required by the Employment Contract.  ECF No. 1-3, p. 9, ¶ 11.

2

- **October 2021**, Ensor states that Clearfield began reducing the number of patients she would see for appointments, thereby, inhibiting her ability to attain the 260-patient minimum a month to satisfy her obligations pursuant to the Loan Repayment Assistance Contract. ECF No. 1-3, p. 11, ¶ 30.

- **Spring 2022**, Ensor was diagnosed with chronic Pancreatitis and was forced to take two weeks of medical leave from work. ECF No. 1-3, p. 9, ¶ 12. This medical leave disrupted Dr. Smeal's personal vacation plans. *Id.* ¶ 16. Afterward, Ensor was told that she could not take two consecutive weeks of vacation leave without prior approval. *Id.* This directive conflicted with the terms of her contract. *Id.* Ensor reports that after she was diagnosed with Pancreatitis, Clearfield further reduced her workload and would no longer allow her to accumulate sick days.[1] *Id.* ¶ 13.

- **July 2022**, Clearfield reduced Ensor's pay in her paychecks for July 17, 2022, and August 14, 2022, from $49.12 per hour to $39.12 per hour. ECF No. 1-3, p. 9, ¶¶ 13-14.

- **July 26, 2022**, Clearfield proposed a new employment contract ("Proposed Employment Contract") and told Ensor that she must sign it by August 26, 2022 (30 days) or she would be fired. ECF No. 1-3, p. 10, ¶ 18. Ensor declined to sign it because it materially and adversely changed the terms of the previous Employment Agreement. *Id.* ¶ 19; ECF No. 1-3, p. 22 (Exhibit C "Proposed Employment Contract"). The relevant substantially differing terms are that Ensor was to be paid an hourly rate of $48.00 per hour,[2] and any overtime would need prior authorization. ECF No. 1-3, p. 22, ¶ 1. Ensor was provided with the same three weeks' vacation, but needed to gain approval to take more than one

---

[1] According to the Employment Contract, Ensor was provided 5 sick days a year. ECF No. 1-3, p. 20, ¶ 5.
[2] According to Clearfield's Brief in Support of its Motion to Dismiss, the Proposed Employment Contract was for an annual salary of $99,840.00 which is an increase in salary from the initial contract providing for $75,000.00 annually.

week at a time, and only would have three days of educational leave. *Id.* ¶ 4. The term of the contract was to begin on July 26, 2022, and could be terminated with 30 days' notice. *Id.* ¶¶ 7, 9. The Proposed Employment Contract did not change the terms of the Loan Repayment Assistance Agreement. *Id.* ¶ 7. Ensor did not sign the Proposed Employment Agreement. ECF No. 1-3, p. 10, ¶ 19.

- **September 23, 2022**, Ensor was informed by letter that her last day of employment with Clearfield would be September 29, 2022. ECF No. 1-3, p. 10, ¶ 21, ECF No. 1-3, p. 23 (letter at Exhibit D). Ensor claims Clearfield did not provide 30 days' written notice according to the Employment Contract. Furthermore, the scheduled termination date was one day before her 9-year anniversary of employment with Clearfield when her annual benefits were due to renew. ECF No. 9, p. 11.

- **September 26, 2022**, Ensor received another letter stating that she hadn't seen 260 patients per month yet received the additional pay described in the Loan Repayment Agreement and may be responsible to reimburse Clearfield for those monies. ECF No. 1-3, p. 12, ¶ 32; ECF No. 1-3 p. 24 (letter at Exhibit E).

## II. Standard of Review

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of Rule 8(a)(2) is to give the defendant fair notice of what the claim is and the grounds upon which it rests.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the Court is not opining on whether the plaintiff will likely prevail on the

merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 C. Wright & A. Miller, Federal Practice, and Procedure § 1216, pp. 235-236 (3d ed. 2004)); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and view them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts in the complaint. *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555. *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.") (citation omitted).

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded

> factual allegations, a court should assume their veracity and then
> determine whether they plausibly give rise to an entitlement for
> relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### III.   Discussion

Ensor alleges that Clearfield breached the Employment Contract and Repayment Agreement because it refused to abide by the agreed upon terms of the contracts. She also claims that Clearfield's actions violate Pennsylvania and Federal Laws. Ensor suffered lost wages, unpaid overtime, lost benefits, inconvenience, mental anguish, and emotional and physical trauma and requests monetary compensation.

Clearfield's Partial Motion to Dismiss seeks to dismiss Ensor's Count I, Breach of the Employment Contract; Count III, Breach of the Repayment Agreement; and Count IV, Interference with Benefits under ERISA (29 U.S.C. § 1140). Clearfield states that Ensor did not make a plausible claim for breach of the Employment Contract because she does not identify important particulars of the alleged oral amendments of the Employment Contract that she claims provided her with pay increases. In addition, she does provide substantive information of the alleged overtime she worked. Clearfield also states, that by her own admission, Ensor did not meet the terms of the Repayment Agreement and therefore, it cannot breach the Repayment Agreement when a condition precedent was not fulfilled. Finally, Clearfield states that Ensor did not satisfy the elements of a claim for interference of ERISA rights. The claims and counterarguments are discussed in turn below.

### A.    Breach of Contract

"Under Pennsylvania law, a party alleging breach of contract 'must establish (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.'" *Ecore Int'l, Inc. v. Downey*, 343 F. Supp. 3d 459, 485 (E.D. Pa. 2018) (citing *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir, 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).  Ensor alleged that Clearfield breached both the Employment Contract and the Loan Repayment Agreement.

### 1.    Employment Contract (Count I)

Both parties acknowledge the existence of the Employment Contract dated September 12, 2013 (ECF No. 1-3, p 20 "Exhibit A").  Its terms are not disputed, and it is recognized as an enforceable contract.[3]  But Ensor claims that this contract was changed pursuant to two oral agreements, in 2014 and 2015, that increased her rate of pay.  Clearfield retorts that Ensor has not pled sufficient facts to establish the existence of an oral contract that changed her rate of pay.  "The party relying on an alleged oral contract…has the burden of proving its existence." *Ecore Int'l, Inc.*, 343 F. Supp. 3d 459 at 486; *see also Edmondson v. Zetusky*, 674 A.2d 760, 764 (Pa. Commw. Ct. 1996).  The elements necessary to establish the existence of an oral agreement are the same as a written contract.  For an oral contract "one must show that: (1) both parties have manifested an intention to be bound by the terms of the agreement; (2) the terms of the agreement are sufficiently definite to be specifically enforced; and, (3) there is mutuality of consideration." *Redick v. Kraft,*

---

[3] "To determine if an enforceable contract exists, all essential elements of a contract must be present. The essential elements of an enforceable contract are: '[1] whether both parties have manifested an intent to be bound by the terms of the agreement; [2] whether the terms are sufficiently definite; and [3] whether consideration existed.'" *Express Fin. Servs. Inc. v. Gateway Abstract Inc.*, 71 Pa. D. & C.4th 344, 348 (Com. Pl. 2004) (citing *Johnston the Florist Inc. v. Tedco Constr. Corp.*, 657 A.2d 511, 516 (1995)).

*Inc.*, 745 F. Supp. 296, 300 (E.D. Pa. 1990) (citing *Channel Home Ctrs. v. Grossman*, 795 F.2d 291, 298-99 (3d Cir. 1986)); *see also Szymanski v. Sacchetta*, No. 10-2336, 2012 WL 246249, at *4 (E.D. Pa. Jan. 26, 2012) (setting forth elements of enforceable contract). "For a contract to be enforceable, the nature and extent of the mutual obligations must be certain, and the parties must have agreed on the material and necessary details of their bargain." *Lackner v. Glosser*, 892 A.2d 21, 30 (Pa. Super. Ct. 2006) (citations omitted). "Contract formation is a matter of law ripe for determination by the Court if a binding contract could not exist under the undisputed set of facts." *Bennett v. Itochu Int'l, Inc.*, Nos. 09-1819, 09-4123, 2012 WL 3627404, at *15 (E.D. Pa. Aug. 23, 2012) (citing *Quandry Sols. Inc. v. Verifone Inc.*, No. CIV.A.07-097, 2009 WL 997041, at *5 (E.D. Pa. Apr. 13, 2009)).

In her Complaint, Ensor states that the Employment Contract was "verbally amended" as to the pay provisions in the first part of 2014, and again in 2015, where her hourly rate was increased, as reflected in her paychecks. ECF No. 1-3, p. 8, ¶¶ 8-9. In determining the existence of an alleged oral contract, the threshold inquiry is whether the parties manifested mutual intent to be bound by the terms of the agreement. *See Guzzi* v. *Morano*, No. 10-1112, 2013 WL 4042511, at *10 (E.D. Pa. Aug. 8, 2013); *see also ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 665-66 (3d Cir. 1998) ("While typically analyzed in terms of offer and acceptance, the decisive inquiry in contract formation is the manifestation of the parties to the terms of the promise and to the consideration for it." (internal quotation and citation omitted)). "In assessing intent, the object of the inquiry is not the inner, subjective intent of the parties, but rather the intent a reasonable person would apprehend in considering the parties' behavior." *Landan v. Wal-Mart Real Est. Bus. Tr., No. 2:12CV926*, 2015 WL 1491257, at *6 (W.D. Pa. Mar. 31, 2015, aff'd, 775 F. App'x 39 (3d Cir. 2019)) (quoting *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582

(3d Cir. 2009)); *see also Legendary Art, LLC v. Godard*, 888 F. Supp. 2d 577, 585 (E.D. Pa. 2012). In cases involving oral contracts, "courts must look to surrounding circumstances and course of dealing between the parties in order to ascertain their intent." *Id.* (quoting *Szymanski*, 2012 WL 246249, at *4); *see also Bennett*, 2012 WL 3627404, at *16 (noting that where an alleged contract is "wholly or partially composed of oral communications, the precise content of which are not of record, courts must look to the surrounding circumstances and course of dealing between the parties in order to ascertain their intent." (quoting *Mountain Props., Inc. v. Tyler Hill Realty Corp.*, 767 A.2d 1096, 1101 (Pa. Super Ct. 2001)).

Ensor does not provide any details about the alleged oral agreements such as the negotiation, rationale, or consideration for the increased pay, the amount of the rate increases, the dates certain for the increased pay, or the parties who agreed to the changes, nor did she provide the paycheck stubs to which she refers. She did not provide facts about the manifestation of the agreement or the terms to be specifically enforced. The Court agrees with Clearfield that Ensor has not sufficiently plead a breach of contract as it relates to the alleged 2014 and 2015 oral contracts that she claims amended the Employment Contract. At the outset Ensor has not provided the necessary facts to establish that any oral contract was agreed upon, and thus none of the three elements to establish the existence of the oral agreements have been satisfied. Without confirmation of the existence of a contract, the Court cannot endeavor to determine whether there was a breach.

As to the second element of contract formation — sufficiently definite terms — Pennsylvania has adopted the Restatement (Second) of Contracts. *See Reed v. Pittsburgh Bd. of Pub. Educ.*, 862 A.2d 131, 135 (Pa. Commw. Ct. 2004). The Restatement provides:

(1) Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain.
(2) The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.
(3) The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance.

Restatement (Second) of Contracts § 33 (1981); *see also Lackner*, 892 A.2d at 30 ("An enforceable contract requires, among other things, that the terms of the bargain be set forth with sufficient clarity." (citation omitted)). Moreover, "in oral agreements, vague statements that fail to include material terms, are indicia that agreements are too uncertain to be enforced." *Sloan v. Frascella*, No. 12-3609, 2013 WL 4433366, at *3 (E.D. Pa. Aug. 16, 2013). "The more important the uncertainty, the stronger the indication is that the parties do not intend to be bound." Restatement (Second) of Contracts § 33, cmt. f (1981).

"Where ... there is no agreement or even a discussion as to *any* of the essential terms of an alleged bargain, such as time or manner of performance, or price or consideration, the 'agreement' is too indefinite for a party to *reasonably* believe that it could be enforceable in an action at law." *Lackner*, 892 A.2d at 31 (italics in original). Given the lack of detail in Ensor's Complaint about the term and basis for the alleged raises in 2014 and 2015, the Court dismisses Ensor's claim for breach of the Employment Contract as it pertains to her salary. It is dismissed without prejudice and the Court will provide Ensor with leave to amend.

In a related claim, Ensor alleges she suffered a pay reduction for two pay periods; she received an hourly rate of $39.12 instead of $49.12 for the pay periods of July 17-30, 2022, and August 17-30, 2022. ECF No. 1-3, p. 9, ¶¶ 13-14. While this claim provides more specificity, the Court is still unable to determine whether there is plausible claim for a breach of contract. The Employment Contract does not contain a provision with either of these rates of pay nor an

equivalent annual salary.[4]  The Court understands that Ensor allegedly received increases in pay pursuant to oral agreements, and the Court also understands that Clearfield, according to the Loan Repayment Assistance Agreement, increased Ensor's monthly salary by $1,600.00.  But Ensor has provided no facts that support that either the alleged pay raises, or loan repayment increase, amounted to a rate of pay of $39.12 or $49.12.  The Court dismisses this claim.  Similar to above, it does so without prejudice and with leave to amend.

According to the facts, on July 26, 2022, Clearfield proposed a new employment contract and told Ensor that she must sign it by August 26, 2022 (30 days) or she would be fired.  ECF No. 1-3, p. 10, ¶ 18.  Ensor never signed it.  On September 23, 2022, Ensor was informed by letter that her last day of employment with Clearfield would be September 29, 2022.  ECF No. 1-3, p. 10, ¶ 21, ECF No. 1-3, p. 23 (letter at Exhibit D).  Ensor claims that she did not receive the 30 days' notice constituting a contractual breach because she was told only six before her discharge.  That Ensor was provided an extra month to sign is irrelevant to the requirement that she be provided with 30 days' written notice of termination.  Still the allegations lack information about whether the Proposed Employment Contract included the 30-day deadline and consequence of termination *in writing* as proscribed by the Employment Contract.  This information is necessary to determine whether there is a plausible claim of a duty breached of the Employment Contract and therefore, this claim is dismissed, without prejudice.

Finally, Ensor claimed that the Employment Contract was breached as to payment for overtime and as to the terms of vacation leave.  Here, there are definite provisions for these benefits in the Employment Contract.  Overtime pay for hours worked in excess of forty per week is $54.09

---

[4] Indeed, as Ensor provides in her Brief in Opposition, The Employment Contract provides for a $75,000 salary and the overtime rate is $54.09 per hour which equates to a regular hourly rate of $36.06.  $36.06 x 1.5 (o.t. rate) = $54.06.  Likewise, $75,000 annually/$2884.62 biweekly equates to $36.06 per hour.  ECF No. 9, p. 5; ECF No. 1-3, p. 20, ¶ 1.

per hour.  ECF No. 1-3, p. 20, ¶ 2.  For vacation, "Ms. Ensor will be entitled to three weeks of vacation… . Vacation … leave may be taken at her discretion."  ECF No. 1-3, p. 20, ¶ 5.  Yet Ensor claims that she was never paid for overtime beginning in April 2020.  ECF No. 1-3, p. 9, ¶ 11, and that she was told in July 2022 that she may not take two consecutive weeks of vacation. ECF No. 1-3, p. 9, ¶ 16.  As to these two claims a contract exists, where Clearfield potentially breached a duty, in turn causing Ensor damages.  The Court finds Ensor has made a plausible claim for breach of contract regarding overtime and vacation.

### 2.  Loan Repayment Agreement (Count III)

The Loan Repayment Assistance Agreement was entered into to "provide student loan repayment assistance to Ms. Ensor for obligations previously incurred to finance her professional education."  ECF No. 1-3, p. 21.  It states:

> It is understood that the total of Ms. Ensor's payments is $1,242.42 per month. Clearfield Professional Group, Ltd. Agrees to increase Ms. Ensor's monthly salary by $1,600.00 for the remaining term of her loans.  It is understood by both parties that this salary increase is for the purpose of loan repayment assistance and will terminate at the end of the loan repayment term, which is scheduled for October 9, 2024….
>
> In consideration of this loan repayment assistance.  Ms. Ensor agrees to remain in the employ of Clearfield Professional Group, Ltd. for a term of one (1) year after the loan repayment date, ending on October 9, 2025.  Ms. Ensor also agrees to maintain a schedule of seeing an average of 260 or more patients per month.

ECF No. 1-3, p. 21.  Ensor claims that at all relevant times she stood ready to comply with the terms of the Agreement but says Clearfield breached the Agreement by unilaterally reducing her patient volume to below 260 patients a month beginning in October 2021.  ECF No. 1-3, p. 11, ¶ 30.  She claims Clearfield diverted patients to other practitioners to escape its obligations under the Loan Repayment Agreement.  ECF No. 1-3, p. 12, ¶¶ 31, 33.  In a September 26, 2022, letter from Clearfield's attorneys it states, "Ms. Ensor has received payments under the separate

agreement to reduce her student loan debt despite the fact that she has not seen an average of 260 patients per month. Should this matter continue, my client reserves the right to seek reimbursement for those amounts." ECF No. 1-3, p. 24 ("Exhibit E").

Ensor makes several allegations about the facts at issue: (1) She claims as a result of her wrongful termination she has been damaged in the total amount due under the terms of the Repayment Agreement, ECF No. 1-3, p. 14, ¶ 46; (2) She alleges that she is unsure whether payments have been withheld on the Repayment Agreement but to the extent that they have, Clearfield has breached the contract, *Id.* ¶¶ 47-48; and (3) Clearfield's words and actions constitute anticipatory repudiation of its future obligations under the Agreement, *Id.*, p. 15, ¶ 49. Ensor seeks a declaration that Clearfield remains obliged under the Loan Repayment Agreement.

Clearfield answers this claim first by stating that Ensor admittedly failed a condition precedent in the Repayment Agreement which obviates its duty to pay her under the contract. ECF No. 7, p. 15. Namely, Ensor did not see the requisite 260 patients a month to enforce the contract. *Id.* Second, Clearfield states there is no obligation for it to continue paying Ensor's loans when she is no longer employed by Clearfield. *Id.* at 16.

The Court understands Count III of Ensor's Complaint to be a breach of contract claim. To reiterate the elements of a breach of contract are the existence of a contract, including its essential terms, a breach of a duty imposed by the contract, and resultant damages. It is undisputed that a contract exists, but Clearfield contests the fact that it breached its duties under the contract. The Court finds that Ensor has not plead sufficient facts to state a claim that Clearfield had breached the Repayment Agreement. The vague facts presented to the Court are that Ensor was to see an average of 260 patients a month to receive the benefit of an additional $1,600.00 in salary a month. But there are no substantive facts alleged of if or when she failed to meet the requisite

patient number[5] and there is no information about when she did or did not receive the added pay (she states she is unsure whether payment was withheld). ECF No. 1-3, p. 14, ¶¶ 47-48. It is impossible for the Court to determine whether a breach of contract claim is plausible when there are insufficient facts plead to do so. The Court cannot determine whether there was a breach of duty to pay Ensor according to the contract when Ensor herself doesn't even know if she was paid properly. The Court dismisses Ensor's claim for breach of contract as it pertains to the Loan Repayment Assistance Agreement, with leave to amend. Ensor's three premises for her breach of contract claim do not satisfy the necessary elements that Clearfield breached a duty under the contract; the factual allegations Ensor makes for wrongful termination and anticipatory repudiation are not relevant to a breach of contract claim.[6]

## B.     ERISA Violation (Count IV)

Ensor claims that when Clearfield terminated her employment it interfered with her benefits, including her comprehensive medical plan[7] and retirement plan in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). ECF No. 1-3, p. 16, ¶¶ 54-56. She states that she was wrongfully terminated in violation of the provisions of her Employment Contract which stipulated 30 days' notice in writing. This termination from employment caused her to lose

---

[5] In fact, Ensor's Brief in Opposition states she has not calculated her monthly patient average. ECF No. 9, p. 7 fn 1.

[6] If Ensor did not see the requisite number of patients per month, contrary to the terms of the contract, she blames Clearfield for deliberately denying her the ability to do so. In support of this assertion she cites to *Craig Coal Mining Co. v. Romani*, for the rule of law that Clearfield may not benefit from placing an obstacle to Ensor meeting the requirements of the contract by claiming she did not meet the terms of the Agreement. *See* 513 A.2d 437, 440. "By preventing performance [it] also excuses it." *Id.* Clearfield states it was not required to provide Ensor with 260 patients a month under the terms of the Agreement and that a "party generally assumes the risk of his own inability to perform his contractual duties." *Luber v. Luber*, 418 Pa. Super. 542, 549 (Pa. Super. Ct. 1992). In any event, whether Clearfield prevented Ensor from fulfilling her obligations under the Loan Repayment Agreement is an issue of fact that will not be addressed at the Motion to Dismiss stage.

[7] Clearfield states that Ensor did not participate in the company Health Plan. ECF No. 7, p. 22.

her benefits.[8]  Clearfield states that Ensor was provided with well over 30 days' notice before termination and she was not wrongfully discharged.  It states that it did not violate ERISA.

The ERISA statute provides in relevant part, "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan…" 29 U.S.C. §1140 (2006) ("Interference with protected rights").  Congress enacted this law "primarily to prevent 'unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights.'" *Gavalik v. Continental Can Co.,* 812 F.2d 834, 851 (3rd Cir. 1987) (quoting *West v. Butler,* 621 F.2d 240, 245 (6th Cir. 1980)).

"To establish a *prima facie* case under ERISA § 510, an employee must demonstrate (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." 29 U.S.C. § 1140 (1982).  *Gavalik,* 812 F.2d at 852.  An employee need only prove that the desire to defeat pension eligibility was a 'motivating' or 'determinative', factor behind the challenged conduct.  *See id.* at 860.  An employee must, however, demonstrate that the [employer] had the "specific intent to violate ERISA." *Id.* at 851 (quotation omitted).  "Proof of incidental loss of benefits as a result of a termination will not constitute a violation of [section] 510." *Id.* (citing *Titsch v. Reliance Group, Inc.,* 548 F. Supp. 983, 985 (S.D.N.Y. 1982).

Ensor claims it can be inferred by the date she was diagnosed with Pancreatitis (Spring 2022) and the date she was presented with an arguably unfavorable Proposed Employment

---

[8] "Benefits under her Employment Contract included eligibility for health care benefits, family health insurance, and individual vision coverage, and each year three weeks of vacation (taken at Ms. Ensor's discretion), one week of education leave (taken at Ms. Ensor's discretion), five days of sick/personal leave, and seven paid holidays per year, payment of malpractice insurance, dues for national state and local Physician Assistant Societies, and registration fees and expenses associated with her Continuing Medical Education." ECF No. 9, p. 10; ECF No. 1-3, p. 20 ¶¶ 5, 7.

Contract and ultimatum to sign or be fired (July 26, 2022), that Clearfield sought to deprive her of her ERISA benefits, especially because her benefits were due to renew the next day.[9]  ECF No. ECF No. 9, pp. 7-8, 11.  Ensor further alleges that one month after she returned to work from a two-week medical leave Clearfield diminished her workload, denied her discretion to take vacation at will, and reduced her pay.  ECF No. 9, p. 13.

Ensor's allegations are not sufficient to make a plausible ERISA claim.  The Complaint is completely devoid of any factual allegations that Clearfield had an underlying intent to deprive Ensor of her retirement plan (if one existed) or health care benefits when it terminated her.  First, Ensor did not subscribe to Clearfield's health plan, so her diagnosis of Pancreatitis and related medical leave time proximity to her discharge is unpersuasive.  Second, there are simply no facts pertaining to Ensor's retirement benefits or lack thereof to persuade this Court that it was Clearfield's intent, when firing her, to prevent Ensor from realizing her pension benefits.  It is explicit in the facts though, that Clearfield wanted Ensor to sign a new employment contract and gave her well in excess of 30 days to sign it, thereby indicating it wanted Ensor to continue with employment at Clearfield.  Thus, it cannot be inferred that Clearfield intended to fire Ensor to

---

[9] ERISA covered plans include "employee welfare benefit plans" or "employee pension benefit plans" as provided in 29 U.S.C. §1002 (3) ("Definitions").  "(1) The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions)."  *Id.*  "The terms "employee pension benefit plan" and "pension plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program— (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan. A distribution from a plan, fund, or program shall not be treated as made in a form other than retirement income or as a distribution prior to termination of covered employment solely because such distribution is made to an employee who has attained age 62 and who is not separated from employment at the time of such distribution."  *Id.*

deprive her of benefits. The case law Ensor provided does not factually align with her claims, and the facts of Ensor's case are not congruent with her assertions claiming Clearfield desired to stymie Ensor's pension eligibility when they discharged her from her duties. There is no plausible claim that Clearfield intentionally interfered with Ensor's benefits and the ERISA claim will be dismissed with prejudice.

### IV.     Amendment

Having found that Ensor's Complaint fails to state a claim in certain instances, the Court also determined whether further amendment of those claims would be futile. *See Hockenberry v. SCI Cambridge Springs/Pennsylvania Dep't of Corr.*, 2019 WL 2270345, at *3 (W.D. Pa. May 28, 2019) ("The U.S. Court of Appeals for Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile"). Viewing the facts in a light most favorable to Ensor, the Court will allow opportunity to amend specific claims that require more detailed facts for the Court to make a substantive determination.

Under the circumstances presented here, Ensor may, if she so chooses, file an Amended Complaint to attempt to cure the pleading deficiencies with respect to the dismissed breach of contract claims only. Alternatively, Ensor may choose to proceed with the Complaint as it stands but only as to the surviving claims of breach of Employment Contract for overtime and vacation provisions and the remaining claim under the Pennsylvania Wage Payment and Collection Law (43 Pa. Stat. § 260.3) (Count II of the Complaint).

### V.     Conclusion

Defendant's Partial Motion to Dismiss (ECF No. 6) Ensor's Complaint will be GRANTED in part and DENIED in part. As to Count I Breach of Employment Contract, the Court finds that Ensor has only provided plausible claims as to overtime pay and vacation. Regarding all other

claims of breach of the Employment Contract the Motion to Dismiss is granted.  The Motion to Dismiss is also granted as to Counts III (breach of Loan Repayment Assistance Agreement), and IV (interference with ERISA benefits).  The breach of contract claims (Counts I and III) are dismissed without prejudice, to replead the elements of the claims with supportive facts.  The ERISA claim of interference of benefits (Count IV) is dismissed with prejudice.

An appropriate Order will be entered.


Dated: <u>August 25, 2023</u>

Stephanie L. Haines
United States District Court Judge